IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDDIE JAMES LOWERY and
AMANDA MARIE LOWERY,

         Plaintiffs,

         vs.                         Case No. 04-3101-JTM

THE COUNTY OF RILEY et al.,

         Defendants.

## MEMORANDUM AND ORDER

This matter comes before the court on the defendants' Motion to Dismiss (Dkt No. 58), to which defendant Riley County Law Enforcement Agency joined (Dkt. No. 76).  The parties have stipulated to certain counts of this action, so the court will address the remaining issues in the motion to dismiss.  See Dkt. No. 81, 82.  Defendants' motion raises two issues: 1) whether Mr. Lowery's claims are barred by the statute of repose; and 2) whether the Riley County Police Department (hereafter "RCPD") is a subordinate government agency and thus not subject to suit. Plaintiffs respond to these arguments by contending:  1) that the statute of repose does not apply to civil rights claims nor does it apply to malicious prosecution claims; and 2) that plaintiff may sue the RCPD because it stands in the shoes of the sheriff, or in the alternative, because the RCPD is an unincorporated association.

In a separate motion, the city and county defendants brought a Motion to Dismiss Designated Claims and Counts of Plaintiffs' First Amended Complaint (Dkt. No. 65).  The issues

before this court include: 1) whether plaintiff Amanda Lowery may bring a §1983 action for loss of familial association; 2) whether plaintiffs have satisfied the notice requirements under state law; 3) whether the city and county defendants are proper parties to be held liable for malicious prosecution under state law; and 4) whether the amount of damages may exceed $500,000 and whether punitive damages may be assessed against the city and county defendants.

 After reviewing the parties' arguments, the court finds as set forth herein.

## I. BACKGROUND

In 1981, plaintiff Eddie Lowery was convicted of raping an elderly woman in her home. After an initial hung jury, a subsequent jury found Mr. Lowery guilty based on a detailed confession he allegedly gave police investigators. Mr. Lowery alleges that the confession came after two days of interrogation where he had vehemently denied his involvement and had been refused an attorney. Defendants contest this account of events. On April 3, 2003, the District Court of Riley County found Mr. Lowery innocent of his conviction. DNA evidence definitively exonerated Mr. Lowery as the perpetrator. Mr. Lowery had spent 10 years in prison and another 10 years on the registered sex offenders list.

On March 25, 2004, Mr. Lowery and his daughter Amanda Lowery brought this action in federal district court pursuant to 42 U.S.C. § 1983 and Kansas law. Since then, defendants have filed two motions to dismiss (Dkt. Nos. 58, 65), a motion for summary judgment (Dkt. No. 62), and a motion for qualified immunity (Dkt. No. 56). Following these filings, the parties entered into two stipulation agreements that clarified which parties were accused of each of the counts of the federal law claims and dismissed all but two state law claims. See Dkt. Nos. 81, 82. As the court understands the agreements, plaintiffs do not allege any claims under Count I-IV and Count

2

VI against the "city and county defendants," which includes the City of Manhattan, Manhattan Board of City Commissioners, in their official capacities, City of Ogden, Ogden Board of City Commissioners, in their official capacities, County of Riley, Riley County Board of Commissioners, in their official capacities and Alvan Johnson in his official capacity as Commissioner. The federal claims against the remaining defendants are still open. These defendants include Riley County Law Enforcement Agency, the Riley County Police Department, William Mike Watson, Alvan Johnson, Larry Woodyard, Steven French, Harry Malugani, Douglass Johnson and Allen Raynor. As for the state claims, two causes of action remain open: 1) Count VIII Malicious Prosecution as it related to the Kansas Tort Claims Act; and 2) Count XV under the Kansas Tort Claims Act. These two claims are alleged against all named defendants.

## II. STANDARD FOR MOTION TO DISMISS

"A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling [him] to relief under [his] theory of recovery." Poole v. County of Otero, 271 F.3d 955, 957 (10th Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Boyd v. Runyon, No. 94-1557-JTM, 1996 WL 294330, at *1 (D. Kan. May 23, 1996) (citing Williams v. Meese, 926 F.2d 994 (10th Cir. 1991)). "The [c]ourt, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions." Fugate v. Unified Gov't of Wyandotte, 161 F. Supp. 2d 1261, 1263 (D. Kan. 2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III. DEFENDANTS' FIRST MOTION TO DISMISS

### A. Kansas Statute of Repose

The first issue raised by defendants' Motions to Dismiss (Dkt. No. 58, 76) is whether the plaintiffs' 42 U.S.C. § 1983 action is barred by the statute of repose. Although defendants note that § 1983 does not contain a specific limitation period, they argue that § 1983 actions should be characterized as personal injury actions and thus subject to the forum state's statute of limitations for personal injury actions. Defendants advance the rationale used to apply state statutes of limitations to § 1983 actions to urge this court to apply the state statute of repose to this action. Plaintiffs respond that there is no authority for the proposition that state statutes of repose apply to federal civil rights claims. Rather, according to plaintiffs, defendants' analysis conflates the standards for statute of limitations with that of statutes of repose. The court is in agreement with plaintiffs' analysis.

### 1. Distinguishing Statutes of Repose from Statutes of Limitations

To unpack defendants' analysis, it is helpful to review the difference between a statute of limitations and a statute of repose. In Menne v. Celotex Corp., 722 F. Supp. 662 (D. Kan. 1989), the federal district court noted that while the terms are used interchangeably, the two types of statutes are distinguishable. Id. at 665. Statutes of limitations generally run from the time of injury or from the time the injury is discoverable, and they serve to limit the time in which an action may be commenced after it has accrued. Id. "The main purpose of such statutes is the prevention of stale claims, serving as 'instruments of public policy and of court management, [which] do not confer upon defendants any right to be free from liability, although this may be their effect.' " Id. at 666 citing Goad v. Celotex Corp., 831 F.2d 508, 511 (4th Cir. 1987), cert.

denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988) (footnotes omitted).

On the other hand, statutes of repose run "at a time unrelated to the traditional accrual of a cause of action."  Menne, 722 F. Supp. at 665 (citing F. McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579, 584 (1981)). They create time limitations that are not measured from the date of injury.  Id. at 665.  Rather, "[t]hese time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant."  Id. at 666.  Statutes of repose operate as a grant of immunity serving primarily 'to relieve potential defendants from anxiety over liability for acts committed long ago.'  Id. citing Goad, 831 F.2d at 511.  Because statutes of repose ignore the date of injury or  the date of discovery of an injury and generally do not have tolling provisions, they are considered substantive in nature and bar actions that are not commenced in the prescribed time period.  Wayne v. Tennessee Valley Authority, 730 F.2d 392, 401 (5th Cir. 1984), cert. denied, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985).  See Myers v. Hayes Intern. Corp., 701 F. Supp. 618, 623-24 (M. D. Tenn. 1988).  Applying these considerations, the Menne court construed Kan. Stat. Ann. § 60-513(b), the same statute in question here, to include a statute of repose.  Menne, 722 F. Supp. at 666.

**2. The Applicability of State Statutes to Federal Civil Rights Actions**

Based on this preliminary understanding of the terms, the court turns to the central question of whether plaintiffs' claims are time barred under the statute of repose.  The general rule is that a federal civil rights action is subject to the state statute of limitations, but not the state statute of repose.  See Sheets v. Lindsey, 783 F. Supp. 577, 578-579 (D. Utah 1991) citing Board of Regents v. Tomanio, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980).

See also Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209 (11th Cir. 2001).  Since Congress has not set a statute of limitations for § 1983 actions, the settled practice is to adopt a local provision as federal law.  See Sheets v. Lindsey, 783 F. Supp. 577, 578-579 (D. Utah 1991) citing Board of Regents v. Tomanio, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980).  Title 42 U.S.C. § 1988 mandates that federal courts apply the law of the state in a § 1983 action "so far as the same is not inconsistent with the Constitution and laws of the United States."  42 U.S.C. § 1988; Miller v. City of Overland Park, 231 Kan. 557, 559-560, 646 P.2d 1114, 1117 (Kan. 1982).  Courts are directed to select the state statute of limitations most analogous and most appropriate to the particular § 1983 action.  Sheets, 783 F. Supp. at 579. "Federal courts are bound by a state's construction of its own statute of limitations, but it is a question of federal law whether a particular state statute is applicable to a federal claim."  Sheets, 783 F. Supp. at 578-79 citing Wilson v. Garcia, 471 U.S. 261, 269-71, 105 S.Ct. 1938, 1943-44, 85 L.Ed.2d 254 (1985).

    The same rule does not apply to statutes of repose.  Although the Tenth Circuit has not addressed this issue, the Eleventh Circuit provided a detailed analysis in Moore v. Liberty National Life Insurance Company, 267 F.3d 1209 (11th Cir. 2001).  In Moore, African American insureds brought a federal civil rights action pursuant  to §§ 1981 and 1982, alleging disparity in the premium payments and benefits received by African-Americans as compared to whites. Moore, 267 F.3d at 1212.  The complaint alleged that Liberty National sold policies in a racially discriminatory fashion from the 1940s to the mid-1970s.  Id. at 1212.  On appellate review, defendants asked the Court of Appeals to determine whether Alabama's rule of repose applied to plaintiffs' §§ 1981 and 1982 claims.  Id. at 1213.  Although the court noted that the Alabama

statute of repose barred claims that arose out of events that are more than twenty years old, the

court was not clear whether the doctrine applied to personal injury actions.  <u>Id.</u> at 1212-13

(citations omitted).

      To determine which rules apply to a civil rights claims, the court drew upon the Supreme

Court's three part test in <u>Wilson v. Garcia</u>, 471 U.S. 261, 267, 105, S.Ct. 1938, 85 L.Ed.2d 254

(1985).  First, the court examines the civil rights statutes themselves and determines if those

statutes contain deficiencies that render them impossible to effect.  <u>Id.</u> (citation omitted).  If the

statute contains a deficiency, then the court looks to the common law of the forum state and

borrows the appropriate state law rule.  <u>Id.</u>  Finally, the court applies the common law rule only if

it is not inconsistent with the Constitution and laws of the United States.  <u>Moore</u>, 267 F.3d at

1214 (citing <u>Wilson</u>, 471 U.S. at 267, 105 S. Ct. 1938; 42 U.S.C. § 1988(a)).

      In answering whether there is a deficiency under the first prong of <u>Wilson</u>, the court uses

the framework developed in <u>Felder v. Casey</u>, 487 U.S. 131, 140, 108 S.Ct. 2302, 101 L.Ed. 123

(1988).  The court examines:  1) whether the absent provision is among the universally familiar

aspects of litigation; and 2) whether the provision is indispensable to any scheme of justice.  <u>Id.</u>

In applying the <u>Felder</u> test, the Eleventh Circuit found that rules of repose are rare in federal

statutory schemes, unlike statutes of limitations.  <u>Moore</u>, 267 F.3d at 1215.  The uncommonness

of statutes of repose also meant that they could not be one of the "universally familiar" aspects of

federal litigation or "indispensable to any scheme of justice."  <u>Id.</u> at 1215-16.  Thus, the lack of a

statute of repose was not a deficiency in a federal civil rights claims under the <u>Felder</u> test.

      Having failed the <u>Felder</u> test, the court found that the lack of a statute of repose could not

be seen as a deficiency in federal civil rights claims.  <u>Id.</u> at 1216.  The court further noted that

defendants could not point to a case where a blanket state rule of repose was applied to a federal civil rights claim.  Id. at 1215.  Instead, federal civil rights actions have always been litigated without the use of blanket rules of repose.  Id. at 1216.  While a statute of repose and statute of limitations may be integrally related doctrines in the state statutory scheme, this does not compel the federal court to adopt the statute of repose when it adopts a statute of limitations.  Id. at 1217. The two doctrines are "clearly distinct, both conceptually and legally" and operated independently of one another.  Id. at 1217-18.  Since the Circuit is only bound to borrow from state law what limitations are deemed necessary, borrowing a rule of repose would contradict this directive.  Id. at 1217.

**3. Plaintiffs' Action**

   **a. Plaintiffs' Federal Claim**

   Kan. Stat. Ann. § 60-513(b) includes a statute of limitation and a statute of repose.  See Menne v. Celotex Corp., 722 F. Supp. 662 (D. Kan. 1989).  It provides in relevant part:

> Except as provided in subsections (c) and (d), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

Kan. Stat. Ann. § 60-513(b).  The statute of repose provides an outer limit of ten years for commencing any action.  Much as in Moore, defendants have not pointed to a single case which applies a statute of repose to a federal civil rights case.  Rather, defendants argue that a statute of repose applies to a federal civil rights case and then cites cases applying a statute of limitations to federal civil rights actions.  Defendants do not argue that the statute of limitations bars this

action.  As the court has already noted in this opinion, the statute of repose and statute of limitations are clearly distinct concepts.  While courts borrow state statute of limitations, they do not borrow state statutes of repose in federal civil rights actions.

Based on the Eleventh Circuit's reasoning in <u>Moore</u>, it would be inappropriate to apply the ten year limitation to this case.  Here, defendants' arguments do not meet either prong of the <u>Felder</u> test.  In federal civil rights cases, statutes of repose are not universally familiar aspects of federal litigation or indispensable to any scheme of justice.  In the next step of the analysis under the first prong of <u>Wilson</u>, the court finds that a lack of a statute of repose cannot be considered a deficiency in the federal civil rights statute.  As a result, plaintiffs' action is not barred by the Kansas statute of repose.

### b. Plaintiff's Malicious Prosecution Claim

Defendants' motion raises the related question of whether the statute of repose would bar the malicious prosecution claim in this case.  The relevant statute provides:

> Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

Kan. Stat. Ann. § 60-515(a).  Defendants argue that the alleged malicious prosecution occurred on July 28-29, 1981, the date Lowery was arrested and charged with rape.  Since the statute of repose bars actions eight years after the time of the act giving rise to the cause of action, defendants argue that plaintiffs' state law claim is time barred.  Plaintiff responds that the statute of repose does not apply to malicious prosecution, and that the court should apply the one year

statute of limitations set forth in Kan. Stat. Ann. § 60-514 for malicious prosecution.

Under Kansas law, a claim of malicious prosecution requires the following elements:  1) defendant initiated, continued or procured to civil or criminal proceedings against the plaintiff; 2) in so doing, the defendant acted without probable cause; 3) defendant acted with malice; 4) the proceeding terminated in favor of the plaintiff; and 5) plaintiff sustained damages as such. Fillmore v. Ordonez, 829 F. Supp. 1544, 1561 (D. Kan. 1993) aff'd by 17 F.3d 1436 (10th Cir. Mar 1, 1994) (citations omitted).  An essential element for bringing a claim of malicious prosecution is that plaintiff must have received a favorable decision in the proceeding.  Nelson v. Miller, 227 Kan. 271, 607 P.2d 438, 443 (Kan. 1980).  The state appellate court  has held that a 42 U.S.C. § 1983 action for malicious prosecution is subject to a one year statute of limitations as set forth under Kan. Stat. Ann. § 60-514.  See Miller v. City of Overland Park, 231 Kan. 557, 562-63, 646 P.2d 1114 (Kan. 1982).  Both parties agree that Mr. Lowery's claim of malicious prosecution only accrued on April 3, 2003, and that the statute of limitations does not bar this action because a claim of malicious prosecution requires the successful outcome of a prosecution wrongfully initiated.  See Dkt. No. 66, at 12.

The statute of repose that defendants cite is not applicable here.  Kan. Stat. Ann. § 60-515(a) is a disability statute that requires that the aggrieved party has been under disability for the statute of limitations to be extended or for the statute of repose to apply.  Morgan v. Donley, 1996 WL 330258, at *2 (10th Cir. June 17, 1996).  See Gilger v. Lee Constr., Inc., 820 P.2d 390, 398 (Kan. 1991).  The statute reads "no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action."  Kan. Stat. Ann. § 60-515(a) (emphasis added).  Mr. Lowery was not under a legal

10

disability after April 3, 2003, when his cause of action accrued.   Prior to April 3, 2003, Mr.

Lowery's cause of action had not accrued because an essential element of a state claim of

malicious prosecution had not been established.  Reading the statute of repose otherwise leads to

the untenable conclusion that an action that had not accrued would be barred before it ever

becomes ripe.  See Lewis v. Shuck, 5 Kan. App. 2d 649,  623 P.2d 520, rev. denied 229 Kan 670

(1981).

Defendants' reliance on Ripley v. Tolbert, 260 Kan. 491, 921 P.2d 1210, 1215 (1996) is

misplaced.  In Ripley, the plaintiff who alleged sexual abuse had been under disability because

she was under 18.  All the elements of the legal claim had been satisfied at the time of the last act

of sexual abuse.  Plaintiff was free to file an action at any time after this accrual.  However,

plaintiff did not bring the action until eight years after the last alleged act of sexual abuse.  As a

result, the court found that the statute of repose barred the claim.  Unlike Riley, Mr. Lowery

could not bring a claim of malicious prosecution until he had been exonerated because he had not

satisfied an essential element of the claim under state law.

Consequently, the court finds that Kan. Stat. Ann. § 60-515(a)'s statute of repose is not

applicable here.  Because Kansas expressly provides a one year statute of limitation for malicious

prosecution that could not have accrued until plaintiff received a favorable decision, the court

finds that plaintiffs' claim of malicious prosecution is not time barred.

**B. Status of Riley County Police Department**

Defendant RCPD argues that it is a subordinate government agency that is not subject to

suit.  Plaintiff responds that because RCPD stands in the shoes of a sheriff or chief of police, it is

an entity subject to suit for federal constitutional and statutory claims.  Alternatively, plaintiff

argues that even if the RCPD cannot be sued it is subject to suit for federal constitutional and statutory claims as an unincorporated association.  After reviewing the parties' arguments, the court finds that RCPD is a subordinate entity not subject to suit but that the director of the RCPD has the capacity to be sued.

Kansas courts have consistently held that subordinate government agencies do not have the capacity to sue or be sued in the absence of statutory authorization.  Hopkins v. State, 237 Kan. 601, 606, 702 P.2d 311 (1985).  Typically, the capacity to sue and the capacity to be sued run together.  Lindenman v. Umscheid, 255 Kan. 610, 611, 875 P.2d 964, 967 Syl. ¶ 10 (Kan. 1994).  The statutory authority to sue or be sued need not be express but can be implied.  Id.  See Board of Library Directors v. City of Ft. Scott, 134 Kan. 586, 588, 7 P.2d 533 (1932).  For example, conferring power on a subordinate government agency to own or control property would have no meaning if the agency could not vindicate its rights in the property by suing in a court of law.  Board of Library Directors, 134 Kan. at 588, 7 P.2d 533.

Pursuant to Kan. Stat. Ann. § 19-4424 et seq., Riley County has two distinct but intimately tied entities that are involved in regional law enforcement:  the Riley County Law Enforcement Agency (hereafter "Law Board") and the RCPD.  The Law Board serves as the oversight body over the RCPD.   Kan. Stat. Ann. § 19-4429 enumerates the powers of the Law Board as including the power to appoint, enter into contracts, establish salary schedules, and adopt organizational rules and regulations.  Kan. Stat. Ann. § 19-4429.  The Law Board also has the  ability to hire and fire the director of the RCPD but is otherwise not involved in the RCPD's daily operations.  Rather, the director exercises considerable autonomy with exclusive control and supervision of RCPD's agents.  See Kan. Stat. Ann. § 19-4430.  Independent of the Law

Board, the director has the ability to ask the respective county or district attorney for legal opinions and advice on matters relating to the powers and duties of the department or officers. Kan. Stat. Ann. § 19-4430.

Although consolidated into one entity, the RCPD maintains some of the hallmarks of a city or county law enforcement department. Prior to the consolidation, the RCPD was three separate institutions – the Riley County Sheriff's Office, the Manhattan, Kansas Police Department and the Ogden County Police Department. By state statute, the individual sheriffs and deputies sheriff were relieved of all their powers and authorities, and these powers were vested in the RCPD and its director. See Kan. Stat. Ann. §§ 19-4435, 19-4436, 19-4438, 19-4440. In essence, the RCPD is the equivalent of a sheriff's department, and the director serves in a capacity commensurate with a sheriff.

Since the director stands in the shoes of the sheriff, he or she assumes the sheriff's powers and responsibilities, which by implication includes the power to be sued. See Sparks v. Reno County Sheriff's Department, No. 04-3034, 2004 WL 1664007, at *4 (D. Kan. Jan. 26, 2004) (noting that a sheriff is an entity that is subject to suit though the Reno County Sheriff's Department was not subject to suit). Although the RCPD is a subordinate entity to the Law Board, the RCPD director has the implied power to sue based on his freedom to control and supervise the RCPD agents. As a result, plaintiff may not bring suit against the RCPD as a separate legal entity, thought it may bring suit against the director, who serves in a capacity equivalent to a sheriff.

In the alternative, plaintiff argues that the RCPD is an unincorporated association that may be sued under Federal Rule of Civil Procedure 17(b). Since the court has already found that

the RCPD is a subordinate agency to the Law Board, the RCPD is more appropriately classified

as part of a greater municipal entity.  Federal Rule of Civil Procedure 17(b) is not applicable

here.

## C. Monell Claims

Defendants are correct that plaintiff must identify an official policy, custom, or practice

that caused plaintiff's injury.  Eberle v. City of Newton, 289 F. Supp. 2d 1269, 1281 (D. Kan.

2003) citing Monell v. New York City Department of Social Services, 436 U.S. 658, 692, 98

S.Ct. 2018, 56 L.Ed.2d 611 (1978).

> The touchstone of a § 1983 action against a governmental body is an allegation that
> official policy is responsible for deprivation of rights protected by the Constitution.
> Municipal liability may not be premised on employment of a tortfeasor with liability
> imposed under a *respondeat superior* theory. Municipalities can be held liable only when
> an injury was inflicted by execution of a government's policy or custom, whether made by
> its lawmakers or by those whose edicts or acts may fairly be said to represent official
> policy.

Cannon v. City and County of Denver, 998 F.2d 867, 877 (1993) (citations omitted).  An

unconstitutional policy or custom does not have to be formal or written to create municipal

liability.  Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988).  Rather, a

municipality may be held liable when the illegal practice is 'so permanent and well settled as to

constitute a 'custom or usage' with the force of law.' "  Camfield v. City of Oklahoma City, 248

F.3d 1214, 1229 (10th Cir.2001) (quoting Cannon, 998 F.2d at 877) (additional citations

omitted).  As the Supreme Court noted, "locating a 'policy' ensures that a municipality is held

liable only for those deprivations resulting from the decisions of its duly constituted legislative

body or of those officials whose acts may fairly be said to be those of the municipality."  Board

of County Com'rs of Bryan County, Okl. v. Brown 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388

14

(1997) (citations omitted).

The Law Board and RCPD have complimentary roles, though structured hierarchically. As already noted, the Law Board is responsible for the adoption of rules and regulations.  Yet, the RCPD "shall be under the exclusive supervision and control of the director and no member of the agency shall interfere by individual action with the operation of the department or the conduct of any of the officers or other personnel of such department."  Kan. Stat. Ann. § 19-4430. Although largely autonomous, the director is responsible to the agency for providing police protection "in conformance with rules and regulations adopted by such agency."  Kan. Stat. Ann. § 19-4430.  The statutory structure simultaneously creates both autonomy and accountability in the RCPD.  While the Law Board may create the official policy, the RCPD director has exclusive supervision and control of its members and directs the customs and practices of the RCPD.  The interrelation creates potential <u>Monell</u> liability for both the Law Board and the RCPD.

## IV.  CITY AND COUNTY DEFENDANTS' MOTION TO DISMISS

### A. Pendant Loss of Association on Behalf of Amanda Lowery

Plaintiff Edward Lowery brings this action with his daughter Amanda Lowery.  The city and county defendants argue that since defendants' personnel were not aware of Mr. Lowery's parental relationship with his daughter, there was no intent to interfere with her rights of familial association.  Plaintiff responds that subsequent court decisions have modified the stringent intent requirement for loss of familial association.  Plaintiff contends that as long as there is more than mere negligence asserted, then plaintiff should be allowed to proceed with her claim.

A § 1983 claim must be premised on a the violation of a plaintiff's personal rights and

not the rights of someone else.  <u>Dohaish v. Tooley</u>, 670 F.2d 934, 936 (1982).  The Tenth Circuit set out this standard in <u>Trujillo v. Board of County Commissioners of the County of Santa Fe</u>, 768 F.2d 1186, 1188 (10th Cir. 1985).  In <u>Trujillo</u>, a mother and sister brought a § 1983 action against various state and county actors for the wrongful death of their son and brother while incarcerated in a county jail.  <u>Id.</u> at 1186.  The court examined whether the plaintiffs could bring an action under § 1983 for the loss of familial association.  <u>Id.</u> at 1189.  While the complaint alleged an intent to deprive the son/brother's rights, the court held that this intent may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights.  <u>Id.</u> at 1190.  The court clearly stated that "[t]he alleged conduct by the State, however improper or unconstitutional with respect to the son, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right."  <u>Id.</u>  In short, there was no "intent to interfere" with a particular relationship protected by the freedom of intimate association.  <u>Id.</u>  While taking a rigid stance on transferred intent, the Tenth Circuit noted that it needed a logical stopping place so that mere negligence would not lead to a § 1983 claim.  <u>Id.</u>  The Tenth Circuit has reaffirmed its approach in <u>Archuleta v. McShan</u>, 897 F.2d 495, 498 (10th Cir. 1990), where it held that a child, who suffered emotional trauma as a result of observing allegedly excessive police force used against his father, did not have a cause of action under § 1983 because the alleged misconduct was not directed at the child.

Plaintiffs cite a number of cases that have addressed the Tenth Circuit's concern in <u>Trujillo</u>.  Plaintiffs argue that <u>Daniels v. Williams</u>, 474 U.S. 327 (1986) helped close the floodgates of which <u>Trujillo</u> was concerned by stating that more than mere negligence is required to assert a due process claim under the Fourteenth Amendment.  <u>See Smith v. City of Fontana</u>,

16

818 F.2d 1411, 1420 n. 12 (9th Cir. 1987) cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987) (overruled on other grounds).  In Smith v. City of Fontana, the Ninth Circuit reviewed the Tenth Circuit's requirement of specific state of mind in light of Daniels and found that "as long as the state official's action which deprived the plaintiffs of their liberty was more than negligent, the plaintiffs can state a section 1983 claim without further alleging that the official was trying to break up their family." Id. at 1420 n. 12.

"[T]here also exists substantial authority holding that individuals may pursue a section 1983 claim for the death of their child or parent." Broadnax v. Webb, 892 F. Supp. 188, 189 (E. D. Mich. 1995) citing Smith v. City of Fontana, 818 F.2d 1411, 1417-20 (9th Cir. 1987) (children could bring section 1983 action for deprivation of father's companionship when father was killed by police during his arrest), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1988); Bell v. City of Milwaukee, 746 F.2d 1205, 1242-48 (7th Cir. 1984) (father, but not siblings, could recover where police killed son); Estate of Bailey v. County of York, 768 F.2d 503, 509 n. 7 (3d Cir. 1985) (following Bell, parents can sue for killing of child).  In these actions, the decedent's estate is permitted to pursue injuries to his or her estate caused by the wrongful death.  Broadnax v. Webb, 892 F. Supp at 190 (citation omitted).  In reviewing these actions, the Michigan federal district court declined to extend a § 1983 action for loss of companionship to children whose parent was in persistent vegetative state after attempting to swallow a bag of cocaine during a police raid.  Broadnax v. Webb, 892 F. Supp at 188, 190 (citation omitted).

In the recent case of Ovando v. City of Los Angeles, 92 F. Supp. 2d 1011 (C.D. Cal. 2000), a California district court found that the reasoning in Smith is not limited to wrongful

17

death actions.  In a factually compelling case, the court found that a child could assert a claim for

loss of familial association with her father, even though she had not been born at the time of his

shooting and imprisonment.  Ovando v. City of Los Angeles, 92 F. Supp. 2d at 1019 n. 7 (C. D.

Cal. 2000) citing Crumpton v. Gates, 947 F.2d 1418 (9th Cir. 1991).  In the case, the Los

Angeles District Attorney's Office learned of Los Angeles Police Department (hereafter

"LAPD") officer misconduct, which included the shooting of unarmed suspects, the planting of

evidence to justify those shootings, the preparation of false police reports to cover up the

misconduct and the presentation of perjured testimony resulting in false convictions and

imprisonment of a number of innocent citizens.  Ovando, 92 F. Supp. 2d at 1014.  After one of

the officer's revelations, the district attorney's office identified Javier Ovando as one of the

victims of LAPD misconduct and petitioned the state court for a writ of habeas corpus and

obtained Mr. Ovando's release.  Id. at 1015.  Mr. Ovando was serving a term of 23 years and four

months for two counts of assault with a firearm on a police officer and one count of exhibiting a

firearm in the presence of a police officer.  Id.  Mr. Ovando had been convicted based on the

testimony of LAPD officers.  Id. at 1015.  Following his release, Mr. Ovando filed a § 1983,

alleging violations of his constitutional rights.  His wife and daughter also filed civil rights and

negligence claims against the City of Los Angeles and various members of the LAPD.  Id.  The

district court reviewed Destiny Ovando's claim of loss of association with her father under §

1983.  The court found that for Destiny to state a claim under § 1983, she must allege that "1) the

conduct complained of was committed under color of state law, and 2) that the conduct deprived

plaintiff of rights and liberties secured by the Constitution."  Id. at 1017 citing Daniels v.

Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  The court found that Destiny

18

had a substantive due process right that could be vindicated even though her deprivation of the right to associate with her father was only "temporary" (i.e. only for the period of his imprisonment).  Ovando, 92 F. Supp. at 1020-21.

The Tenth Circuit has observed the shift in the law.  In Apodca v. Rio Arriba County Sheriff's Department, 905 F.2d 1445, 1448 (10th Cir. 1990), a three judge panel noted that "the Supreme Court's recent cases requiring proof of more than negligence to support a § 1983 action premised on the Due Process Clause are harmonious with the precedent of this circuit, including Trujillo, and we do not reconsider it at this point."  Id.

Since the Tenth Circuit's last review of Trujillo, a number of cases have refined and modified the view of § 1983 actions brought by family members.  A number of circuits have permitted wrongful death actions brought by the estate of the deceased.  To a more limited extent, § 1983 actions have been permitted where there is evidence of actual malice.  With the Supreme Court's decision in Daniels, federal courts seem to distinguish those instances where there was mere negligence from those cases where there is actual malice.  Where, at best, there is mere negligence, as in the case of Daniels, the courts have not permitted a cause of action under § 1983 on behalf of other family members.  On the other hand, where there is some manifestation of actual malice, a court may be willing to permit recovery as in Ovando.  The Tenth Circuit has been clear that mere negligence is not a sufficient basis for bringing a § 1983 action.  While taking a rigid stand on transferred intent, the Tenth Circuit has not directly addressed the issue of whether actual malice would provide sufficient basis to state a claim for loss of association under § 1983.  Because the allegations in this claim assert that more than mere negligence is at play, the court finds the reasoning in Ovando is persuasive and provides a solid framework for plaintiff to

19

assert a cause of action that conforms with the policy concerns articulated in <u>Trujillo</u>.  The allegations in the complaint raises questions of fact as to whether Mr. Lowery was subject to malicious actions to which his daughter also became a victim.  Under these circumstances, plaintiff's claim for loss of association survives a motion to dismiss and should be allowed to proceed.

## B. Satisfaction of Notice of Claim Requirements

Defendants argue that plaintiff Edward Lowery's state law claim of malicious prosecution and related claim under the Kansas Tort Claims Act should be dismissed because plaintiff inadequately served notice as required by Kan. Stat. Ann. § 12-105b(d).  Defendants further note that a notice should be served by the time this motion is decided.  Plaintiffs respond that the state notice requirements were satisfied.  Since plaintiffs clarified that they do not intend to advance state law claims against the city and county defendants on behalf of Amanda Lowery, the court will not address the issue of notice requirements pursuant to Kan. Stat. Ann. § 12-105b(d) as to her.

Kan. Stat. Ann. § 12-105b(d) provides that a person filing a claim against a municipality that could give rise to an action under the Kansas Tort Claims Act must give written notice to the municipality before commencing his or her claim.  The notice should include:  1) the name and address of the claimant and the name and address of the claimant's attorney, if any; 2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; 3) the name and address of any public officer or employee involved, if known; 4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and 5) a statement of the amount of monetary damages that is

being requested.  Kan. Stat. Ann. § 12-105b(d).  The legislation intends to insure that a

municipality is aware of a claim before it is brought into court.  Smith v. Kennedy, 26 Kan. App.

2d 351, 361, 985 P.2d 715 (1999).  It affords the public entity the opportunity to investigate the

claim, to assess its liability, to attain settlement, and to avoid costly litigation.  Gehring v. Board

of County Com'rs of County of Kingman, 1992 WL 190633, at *3 (D. Kan. 1992).  While filing

a notice is a pre-requisite to commencing an action, the legislature has clarified that "substantial

compliance" with the enumerated notice terms will constitute a valid filing of a claim.  Kan. Stat.

Ann. § 12-105b(d).  See Tucking v. Bd. of Jefferson County Com'rs, 14 Kan. App. 2d 442, 444-

45, 796 P.2d 1055, review denied, 246 Kan. 770 (1990).

The parties dispute whether several subsections of the notice requirements have been met.

First, the city and county defendants argue that their employees were not named and linked to the

time, date, place or circumstances of the event complained of.  Plaintiff argues that this reading

of the notice requirement blurs the requirements of subsections (2) and (3). The court is in

agreement with plaintiff's argument.  The statute requires two distinct notice requirements:  a

concise statement of the facts and separately the name of address of any known public officers.

At this stage, the plaintiff has given the city and county defendants the circumstances of the case

and the names of those involved of whom they are aware.  Because of the unique structure of the

RCPD and the Law Board, liability may be shared by outside entities and may include the cities

and counties.  Where such uncertainties exist, plaintiff is well-advised to serve notice to those

municipal entities that may also be involved.  Doing so provides the requisite notice and prevents

the court from later barring plaintiff's claims against the municipalities for lack of prior notice of

claim.

As to subsection (5), the city and county defendants argue that plaintiff did not identify the amount of monetary damages requested.  Plaintiff argues that stating that the amount would not exceed fifteen million dollars substantially complies with the notice requirements.  The court agrees with plaintiff's interpretation.  Any figure presented by a claimant can only be an estimate.  Plaintiff's phrasing merely acknowledges this fact.  Considering the difficulty in valuing the cost of the alleged violations in this case, providing an upper limit is appropriate.  Such a notice clearly provides the city and county defendants the outer limits of their potential liability.

This case is clearly distinguishable from Tucking v. Board of Commissioners of Jefferson County, which the city and county defendants cite.  In Tucking, the plaintiff argued that he had substantially complied with the terms of the notice statute, even though he had not stated the amount of monetary damages or the type of injury suffered.  Tucking v. Board of Com'rs of Jefferson County, 14 Kan. App.2d 442, 447, 796 P.2d 1055, 1059 (Kan. App. 1990).  However, plaintiff in this case did not omit any of the elements of notice.  Rather, they merely qualified the terms of the amount requested, which in some regards creates a more accurate picture of their potential liability.

As a result, the court finds that plaintiffs have substantially complied with the notice terms.

**C. Liability under State Law**

Separate from the prior discussion of malicious prosecution, the city and county defendants argue that plaintiffs' complaint does not identify any of its personnel that "initiated, continued or procured civil or criminal proceedings against the plaintiff" as required in a claim of malicious prosecution.  See supra III.A.3.b.  Defendants content that the state legislature stripped

the individual cities and counties of their power over law enforcement and vested this in a new municipal entity.  As in the prior discussion, plaintiffs analogize the structure of the new law enforcement entities to a local sheriff or police department.

To determine whether an employer-employee relationship exists, courts examine "whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished."  Hartford Underwriters Ins. Co. v. State, Dept. of Human Resources, 272 Kan. 265, 270-271, 32 P.3d 1146, 1151 (Kan. 2001).  "It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control" that determines the classification as an employee.  Id. citing  Mitzner v. State Dept. of SRS, 257 Kan. 258, Syl. ¶ 2, 891 P.2d 435 (1995).

Where an employer-employee relationship exists, the Kansas Tort Claims Act provides that a city: "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable."  Kan. Stat. Ann. § 75-6103 (1997).  See also Casas v. City of Overland Park, 2001 WL 584426, at *5-6 (D. Kan. May 14, 2001).  Under the KTCA, to determine if an employee is acting within the scope of employment the court considers: 1) whether the act by the employee was done for the employee's personal benefit or in furtherance of the state's business; 2) whether there was express or implied authority to perform the act in question; and 3) whether the employee's act was reasonably foreseeable by the State.  The liability of the State for an act of an employee depends ... upon whether the employee, when the employee did the wrong, was acting in the prosecution of the State's

23

business and within the scope of the employee's authority, or had stepped aside from that business and done an individual wrong.  Id. at *6 citing Commerce Bank v. St. Joseph, 251 Kan. 207, 215, 833 P.2d 996, 1001.  Kansas courts have used cases deciding scope of employment pursuant to the doctrine of respondeat superior to aid in deciding scope of employment pursuant to the KTCA.  See, e.g., Commerce Bank, 251 Kan.  at 210-11, 833 P.2d at 998-99.

The Kansas legislature created a unique framework for municipal law enforcement with the enactment of Kan. Stat. Ann. § 19-4424 et seq.  As previously noted, the role of the Law Board and the RCPD are intimately connected but the two bodies operate independently of each other in some respects.  See supra III.A.3.b.  On the Law Board sits seven members who serve in a supervisory role over the RCPD.  Kan. Stat. Ann. § 19-4427.  Presently, the Law Board consists of two City Commissioners from the City of Manhattan, one Riley County Commissioner, and the Riley County Attorney.  Kan. Stat. Ann. § 19-4427.  See also RCPD Home Page, at www.pd.co.riley.ks.us/rcpd_lawboard.htm.  There are also positions for citizens who are presently from Riley County and the City of Manhattan.  Kan. Stat. Ann. § 19-4427. The budget of the RCPD is provided for by the participating cities and counties.  Kan. Stat. Ann. § 19-4443.  There may be slight variation as to the particular city or county represented in this composition at the time of the alleged events.

While case law on how participating cities and counties should be treated in their relationship with the RCPD and the Law Board is limited, defendants cited one case that addressed the relationship.  Johnson v. Kansas Public Employees Retirement System, 262 Kan. 185, 935 P.2d 1049 (1997) discussed this issue, albeit in the context of benefits.  In Johnson, plaintiffs challenged the change in their pension plan from a City plan requiring a 3%

contribution to the KPERS plan requiring a 7% contribution.  Id., 262 Kan. 185, 935 P.2d at

1054.  The Kansas Supreme Court barred the claim based on the statute of limitations.  Id. 262

Kan. 185, 935 P.2d at 1055.  In so doing, the court noted that "[f]rom December 31, 1973, the

officers were prohibited by statute from acting as City police officers and ceased contributing to

the City's pension plan."  Id. at 1053.  The enactment of the legislation created a new

organizational structure for law enforcement officers so that they lost their status as city

employees.  This, however, does not answer the question of whether the cities and counties

continued to maintain some degree of control over the RCPD employees in other forms.

        Based on the statutory scheme, it is clear that the officers are no longer directly

employees of the individual cities.  At the same time, the cities and counties have not abandoned

all control over regional law enforcement by consolidating their local law enforcement

departments.  Several factors indicate that the cities and counties have the right and authority to

interfere or control the activities of the RCPD.  First, the statutory framework provides that the

official representatives of the city and county are involved in decision making with positions for

the "board of commissioners" and members of the cities' "governing body," or alternatively

members chosen by these institutions.  The Law Board serves to preserve the oversight of the

cities and counties through their official representatives but attempts to balance the influence

exerted by any individual city or county.  Kan. Stat. Ann. § 19-4429.  Second, through the Law

Board, the cities and counties may direct the RCPD's activities, which includes the authority to

direct the manner in which the work is performed and the results accomplished.  See Kan. Stat.

Ann. § 19-4429.  Although the director has some areas of exclusive control, the statutory scheme

only prevents individual board member from intervening with this power.  Kan. Stat. Ann. § 19-

25

4430.  The Law Board as a collective may still direct what services the RCPD provides, to whom and how.  See Kan. Stat. Ann. § 19-4430.  Finally, the cities provide the financial support for the RCPD in the same manner a city would provide support to its local law enforcement.  Cleary, the creation of the Law Board was not intended to exonerate the city and county defendants of the liabilities they would normally incur for the actions of their law enforcement.  Rather, the framework was intended to allow for the better use of the limited financial resources available for law enforcement.  See Kan. Stat. Ann. § 19-4426.  As a result, a wholesale dismissal of the city and county defendants is not appropriate.  Since the city and county defendants maintain authority over the RCPD through their membership and participation in the Law Board, plaintiffs may allege their state law claims of malicious prosecution against these entities.

**D. Defendants' Maximum Liability under the Kansas Tort Claims Act**

**1. Amounts Exceeding $500,000 Cap on Damage Liability**

The defendants concede that the cap on damage liability is either $500,000 or the limit of their insurance pursuant to Kan. Stat. Ann. § 75-6105(a). Whether or not defendants have available insurance is still a subject of discovery, and defendants concede that the plaintiffs have a right to pursue this discovery.

**2. Punitive Damages Against the City and County Defendants**

Both parties agree that the city and county defendants cannot be held liable under the KTCA for exemplary or punitive damages or for prejudgment interest on state claims.  However, the claims are still viable against the individual employees of the entity who plaintiffs allege committed actual fraud or actual malice.  Kan. Stat. Ann. § 75-6105(c).

IT IS ACCORDINGLY ORDERED this 25th day of May, 2005, that the court grants in

part and denies in part defendants' Motion to Dismiss (Dkt. Nos. 58, 76).

IT IS FURTHER ORDERED that the court denies the city and county defendants'

Motion to Dismiss (Dkt. No. 65).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE