## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDDIE JAMES LOWERY, and     )
AMANDA MARIE LOWERY,        )
                            )
            Plaintiffs,     )
                            )
v.                          )     Case No. 04-3101-JTM
                            )
THE COUNTY OF RILEY, et al.,)
                            )
            Defendants,     )
_____)

## MEMORANDUM AND ORDER

Before the Court are Defendants' Motions to Stay Discovery Pending

Decision on Defendants Motion for Qualified Immunity.  (Docs. 60, 78.)  Plaintiffs

filed a response  (Doc. 85), and Defendants replied (Doc. 94).  The Court has

reviewed the briefs and is prepared to rule.

## BACKGROUND

In the early morning hours of July 26, 1981, Arta Kroeplin was raped in her

home.  (Doc. 63 ¶ 1.)  At 3:00 a.m. that same morning, Plaintiff Eddie Lowery was

involved in a car accident in the neighborhood of Kroeplin's home.  (Doc. 46 ¶

35.)  Based on Lowery's presence in the area near the time of the crime, defendants

Harry Malugani and Douglass Johnson ("the Officers"), police officers

investigating the case, requested that  Lowery go to the police station for

questioning.  *Id.* at ¶ 34.  On July 27, 1981, Lowery voluntarily submitted himself for questioning.  *Id.*

The Officers read Lowery his Miranda rights, and Lowery waived them.  *Id.* After being questioned for about an hour, Lowery consented to a search of his home and car.  *Id.* at ¶ 37.  After the Officers completed the search, they asked Lowery if he could return to the station at 8:00 a.m. the next morning for further questioning.  (Doc. 63 ¶ 16.)  Lowery agreed and returned for questioning the next morning.  *Id.* at ¶ 16; Doc. 46 ¶ 38.  On July 28, 1981, after several hours of interrogation and a three hour polygraph test, Lowery confessed to raping Kroeplin.  (Doc. 46 ¶¶ 38–47.)

Plaintiffs allege that Lowery was deprived of sleep (Doc. 46 ¶¶ 34, 38, 43, 45), food and drink (Doc. 46 ¶¶ 38, 43, 45, 49), and access to an attorney (Doc. 46 ¶¶ 41, 50).  Plaintiff's further allege that the Officers fabricated the confession by force-feeding or suggesting answers to Lowery.  *Id*. at ¶ 47.

Lowery was arrested and charged with rape, among other things.  He was tried and convicted.[1]  Lowery was incarcerated for approximately ten years and three months.  *Id*. at ¶ 64.  After his parole in 1991, Lowery was required to report

---

[1]  Notably, Lowery was tried twice.  The first trial resulted in a hung jury.  The second jury found Lowery guilty.

to local law enforcement as a sex offender, his name was published in a local
newspaper as a sex offender, and he was dishonorably discharged from the
military.

Then, on September 11, 2002, DNA evidence excluded Lowery as the
source of the semen taken from the crime scene and the victim's body.[2]  On April
3, 2003, a Kansas District Court Judge vacated Lowery's conviction, stating "[i]t is
impossible for the defendant to have committed the crimes with which he was
convicted."  *Id*. at ¶¶ 68, 69.

Lowery and his daughter brought this action against Riley County and
several of its agencies and employees, seeking compensation under 42 U.S.C. §
1983 and various state law causes of action.  Defendants have filed numerous
dispositive motions.  Several of the state law claims have been dismissed by
stipulation of the parties (Docs. 81–83), and by Memorandum and Order of May
25, 2005, the district court denied two of defendants' motions to dismiss.  (Doc.
95.)  Two summary judgment motions directed to state law claims remain pending.
(Doc's 62, 77.)

The individual defendants also filed a motion to dismiss based on the

---

[2]  Defendants do not challenge Lowery's innocense.

3

doctrine of qualified immunity.  (Doc. 56.)[3]  On the same date, defendants filed

motions to stay discovery pending a ruling on their motion for qualified immunity.

(Doc's 60 & 78).  It is these motions for stay of discovery that are now before the

court.

Defendants argue that the discovery sought by Plaintiffs is extraordinarily

burdensome,[4] irrelevant,[5] and would be entirely disposed of by the summary

judgment motion, if granted.  Plaintiffs oppose the stay, arguing that the summary

judgment motion has no merit, that additional, relevant discovery regarding the

states of mind of the Officers is needed to oppose the motion, and that, in any

event, a finding of qualified immunity does not foreclose Plaintiffs' supervisory

liability claims or *Monell* [6] claims against the municipality and political

_____

[3] While titled as a motion to dismiss, the supporting memorandum (Doc. 57) contained a detailed "Statement of Uncontroverted Facts" and relied upon attached documents (transcripts of motions hearings and jury trial).

[4] Defendants cite only one specific written discovery request to support this proposition, which seeks "any and all documents for all cases investigated by the RCPD where a suspect's confession or statement was deemed inadmissible for any reason from July, 1971 to July 27, 1986."  (Doc. 61 at 4.)

[5] Defendants do not cite any specific request as being irrelevant, but merely assert that Plaintiffs discovery is "directed at whether the municipal defendants had a policy or custom that caused a violation of [Lowery's] constitutional rights and whether supervisory officials had any knowledge of alleged unconstitutional action by Malugani and Johnson."  (Doc. 61 at 3.)

[6] *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

subdivision Defendants.[7]

## DISCUSSION

Generally, the decision to stay discovery rests within the discretion of the trial court. ***Kutilek v. Gannon***, 132 F.R.D. 296, 297 (D. Kan. 1990); *see also* ***Am. Maplan. Corp. v. Heilmayr***, 203 F.R.D. 499, 501 (D. Kan. 2001) (stating that a Magistrate's non-dispositive pretrial orders are subject to a deferential, "clearly erroneous" standard). It is the general policy of this district not to stay discovery, notwithstanding the existence of pending dispositive motions. ***Wolf v. United States***, 157 F.R.D. 494, 495 (D. Kan. 1994). However, when a government official defendant alleges qualified immunity as a defense, different rules apply.

A.   <u>QUALIFIED IMMUNITY DEFENSE</u>

After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a "heavy two-part burden." ***Albright v. Rodriguez***, 51 F.3d 1531, 1534 (10th Cir. 1995); ***Medina v. Cram***, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must first establish "that the defendant's actions violated a constitutional or statutory right." ***Albright***, 51 F.3d at 1534. If the plaintiff

---

[7] These include the County of Riley, Riley County Board of Commissioners, the City of Ogden, the Ogden Board of City Commissioners, the City of Manhattan, the Manhattan Board of City Commissioners, the Riley County Law Enforcement Agency, and the Riley County Law Enforcement Department. (Doc. 46, ¶ 104.)

5

establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* at 1534.

In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable official would understand that what he is doing violates that right." ***Wilson v. Layne***, 526 U.S. 603, 615, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (internal quotation marks omitted); *see also* ***Harlow v. Fitzgerald***, 457 U.S. 800, 815–20, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (overruling its prior decisions allowing for defeat of qualified immunity upon the allegation of a subjective malicious intent by the public official). A constitutional right is clearly established when there is a Supreme Court or Tenth Circuit decision on point or when the law is clearly established by the weight of authority from other courts. ***Medina v. City & County of Denver***, 960 F.2d 1493, 1498 (10th Cir. 1992); ***McCormick v. City of Lawrence***, 325 F. Supp. 2d 1191, 1200 (D. Kan. 2004). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." ***Saucier v. Katz***, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

Plaintiffs allege that the Officers violated Lowery's constitutional rights by intentionally or knowingly fabricating evidence of Lowery's guilt, by coercing Lowery's confession, and by maliciously prosecuting Lowery.  (Doc. 86 at 11–14.) Defendants argue that they are entitled to qualified immunity because they did not deprive Lowery of any constitutional or statutory rights.  Their motion is not, however, based on an argument that the applicable law was not clearly established. (Doc. 96 at 4, n.5.)

B.     DISCOVERY IN QUALIFIED IMMUNITY CASES

The Supreme Court has long recognized that "public officers require [qualified immunity] protection to shield them from undue interference with their duties and from potentially disabling threats of liability."  ***Harlow v. Fitzgerald***, 457 U.S. 800, 806, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Such immunity is required to protect public officials and the public generally from the expenses of litigation, the diversion of official energy from public issues, the deterrence of qualified citizens from acceptance of public office, and the social cost that fear of being sued will have a chilling effect on officials from exercising their official duties with ardor.  *Id.* at 814.

Recognizing that the high costs of litigation may cause these harms to occur, even where a favorable verdict for the public official is rendered, the Supreme

7

Court, in *Harlow*, stated that, until the threshold question of immunity is resolved, discovery should not be allowed.  *Id*. at 818; *see also Dahl v. City of Overland Park*, No. 02-2036-JAR, 2002 WL 1634805, at *1 (D. Kan. July 8, 2002) ("Generally speaking, a defendant is entitled to have questions of immunity resolved before being required to engage in discovery and other pretrial proceedings.").

However, *Harlow* does not prevent all discovery, but only protects against the costs of broad reaching discovery.  *Crawford-El v. Britton*, 523 U.S. 574, 594 n.14, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (citing *Harlow*, 457 U.S. at 818). Discovery may be necessary before the motion on qualified immunity grounds can be resolved, but any such discovery should be narrowly tailored to the issues necessary to resolve the qualified immunity issue.  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987);[8] *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (stating that "limited discovery may sometimes be necessary before the district

---

[8] Notably, the *Anderson* Court, among others, stated that the defendants were entitled to disposition on the pleadings prior to any discovery, but if the plaintiff's case survived that challenge, discovery may be needed to dispose of the case on summary judgment.  In this case, Defendants' motion is titled as a motion to dismiss but more closely resembles a motion for summary judgment. *See* note 3, *supra.*  Thus, the Court is not presented with a scenario where all discovery must be stayed pending resolution of a motion to dismiss on the pleadings.

court can resolve a motion for summary judgment based on qualified immunity");

*Lewis v. City of Fort Collins,* 903 F.2d 752, 754, 758 (10th Cir. 1990);  *cf. Wolf v.*

*United States*, 157 F.R.D. 494, 495 (D. Kan. 1994) (stating that even if a stay is

appropriate pending resolution of a dispositive motion, it must be tailored so as not

to prevent a party from discovery on matters bearing on the motion).

C.     DISCOVERY ON MONELL CLAIMS

Qualified immunity protection extends only to government officials being

sued in their <u>individual</u> capacities, not to governmental entities or officials being

sued in their official capacities.  *Rome v. Romero*, 225 F.R.D. 640, 643 (D. Colo.

2004) (citing *Owen v. City of Independence*, 445 U.S. 622, 652–53, 100 S. Ct.

1398, 63 L. Ed. 2d 673 (1980); *Meiners v. University of Kansas*, 359 F.3d 1222,

1233, n.3 (10th Cir. 2004)).  Accordingly, the corresponding protection against

discovery does not automatically apply to preclude discovery requests directed at

governmental entities or officials being sued in their official capacities.

In this case, two law enforcement entities join in the motion to stay

discovery.[9]  They claim that no discovery should be conducted on Plaintiff's

---

[9] Riley County Law Enforcement Department joined in the initial motion to stay
(Doc. 60), and Riley County Law Enforcement Agency later filed a separate motion.
(Doc. 78).  In ruling on motions to dismiss, the district court has held that both of these
entities face potential *Monell* liability.  (Doc. 95 at 14-15.)

9

*Monell* claims because, if the court determines that the Officers are protected by

qualified immunity, *i.e.,* that reasonable officers in their position could believe that

there was no violation of Lowery's constitutional rights in connection with

obtaining his confession, this will preclude any *Monell* or supervisory claims.

(Doc. 61 at 3.)

Plaintiffs argue that their *Monell* claims will still be viable even if

Defendants are granted qualified immunity as to <u>certain</u> claims, unless the court

determines that there are <u>no</u> underlying constitutional violations as a matter of law.

(Doc. 86 at 19).  Plaintiffs acknowledge that some of their requested discovery

concerning training and supervision may also relate to their *Monell* and

supervisory claims against the various governmental entities.  (Doc. 86 at 19.)

In *Hinton v. City of Elwood*, the Tenth Circuit discussed at some length the

relationship between qualified immunity findings and *Monell* claims for failure to

train:

> The district court granted summary judgment to
> [Plaintiff] Hinton on the ground that the [Defendant]
> city's failure to train its officers or adopt written policies
> was not the result of deliberate indifference. Given our
> conclusion that [Defendants'] Myer and White's conduct
> was not constitutionally excessive, however, we do not
> need to reach the issue of whether the city acted with
> deliberate indifference.
>
> A municipality may not be held liable where there

10

was no underlying constitutional violation by any of its officers. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Apodaca v. Rio Arriba County Sheriff's Dept.,* 905 F.2d 1445, 1447-48 (10th Cir.1990); *Watson v. City of Kansas City,* 857 F.2d 690, 697 (10th Cir.1988).

\* \* \*

This conclusion is not inconsistent with our statement in prior cases that a finding of qualified immunity does not shelter a municipality from liability. *See, e.g., Medina v. City and County of Denver,* 960 F.2d 1493, 1499-1500 (10th Cir.1992); *Watson,* 857 F.2d at 697. In *Medina* we determined that the individual defendants were entitled to qualified immunity because the law was not clearly established, 960 F.2d at 1498-99, and in *Watson* we remanded for a finding on that issue, 857 F.2d at 697. When a finding of qualified immunity is predicated on the basis that the law is not clearly established, it is indeed correct that "there is nothing anomalous about allowing [a suit against a municipality] to proceed when immunity shields the individual defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred." *Watson,* 857 F.2d at 697.

An individual municipal officer may also be entitled to qualified immunity, however, because the officer's conduct did not violate the law. When a finding of qualified immunity is predicated on this latter basis, such a finding is equivalent to a decision on the merits of the plaintiff's claim. *See Siegert,* 500 U.S. at ---- - ----, 111 S.Ct. at 1793-94. In such a case, a finding of qualified immunity may preclude the imposition of any municipal liability. In the instant case, our finding of qualified immunity was predicated on this latter basis. Accordingly, we may properly rely on this finding to dismiss Hinton's claims against the City of Elwood.

11

***Hinton v. City of Elwood, Kan***. 997 F.2d 774, 782-783 (10th Cir. 1993).  ***Hinton***

makes clear that the validity of ***Monell*** claims may be dependant upon the first

prong of the qualified immunity test (lack of a constitutional violation), but are

independent of the second prong (law not clearly established).  Thus, if Defendants

can show that no constitutional violation occurred, then the ***Monell*** claims become

moot.  However, the ***Monell*** claims may be valid whether or not the law was

clearly established for qualified immunity purposes.  Defendants note that their

motion for qualified immunity is based entirely one the first prong of the qualified

immunity test, and not the second prong.  (Doc. 94 at 4, n.5.)

The Court believes that the parties are both correctly stating the law

concerning the relationship between qualified immunity findings and ***Monell*** or

supervisory claims, but have divergent views as to whether Defendants will be able

to establish the first prong of the qualified immunity test for <u>all</u> of Plaintiff's

federal claims.  Defendants focus on Lowery's claim that the officers coerced his

confession, while Plaintiffs argue that the claims of fabricated evidence/testimony

and malicious prosecution require a separate qualified immunity analysis.  The

Court is simply not in a position at this time to determine whether Plaintiffs'

***Monell*** claims will or will not be precluded by the district judge's ruling on the

qualified immunity motions.  In this situation, the Court believes that the better

practice is to stay discovery concerning the *Monell* claims to the extent that the requested discovery is not independently relevant to the qualified immunity defense.  *See* Part D, *infra*.

D.   DISCOVERY REQUIRED TO DEFEND AGAINST QUALIFIED IMMUNITY MOTIONS

The trial court should exercise its discretion to protect the substance of the qualified immunity defense and to ensure that public officials are not subjected to unnecessary and burdensome discovery.  ***Crawford-El v. Britton***, 523 U.S. 574, 597–98, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).  "[U]ntil the threshold immunity question is determined, discovery shall be limited to resolving that issue alone."  ***Lewis v. City of Fort Collins***, 903 F.2d 752, 754 (10th Cir. 1990). Discovery requiring the participation of the Defendants being sued in their individual capacities may be necessary, however, to determine whether the Officers are entitled to qualified immunity, but until the threshold immunity question is determined, discovery requiring their participation should be limited to resolving that issue alone.  ***Moore v. Busby***, 92 Fed. Appx. 699, 702 (10th Cir. 2004) (citing ***Lewis v. City of Ft. Collins***, 903 F.2d 752, 754, 758 (10th Cir. 1990)); *see also* ***Rome v. Romero***, 225 F.R.D. 640, 643-44 (D. Colo. Nov. 22, 2004) (stating that limited discovery may be necessary where qualified immunity is asserted in a motion for summary judgment on contested factual assertions).

13

Plaintiffs must specify the information sought through discovery and explain how it relates to their opposition to the qualified immunity motion.  *See **Moore***, 92 Fed. Appx. at 702 (stating that "in response to a summary judgment motion based on qualified immunity, a plaintiff's 56(f) affidavit must . . . demonstrate a connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion") (citations and quotations omitted).

In this case, Plaintiffs request that they be allowed to conduct substantial additional discovery, including: (1) taking depositions of Defendants Malugani, Johnson, and Raynor, (2) taking depositions of all assistant district attorneys who participated in Lowery's prosecution, (3) taking depositions of all supervisors and police officers who participated in the investigation of the Kroeplin rape or communicated with the Officers concerning the investigation or prosecution of Lowery, (4) taking 30(b)(6) depositions concerning the training of the Officers regarding the primary issues in this case, and (5) expert discovery concerning false confessions and coercive tactics.[10]  (Doc. 86 at 2–3.)

Defendants claim that additional discovery is unnecessary because the only issue with respect to the qualified immunity defense is whether a reasonable officer

---

[10]  The Court reorganized Plaintiffs' requests, separating some requests and combining others, to prevent duplication of analysis.

would have thought that Lowery's confession was voluntary, insisting that the Officers' subjective intent with respect to the investigation of Lowery is irrelevant. Defendants claim that Malugani, Johnson, and Lowery are the only people who would have information relevant to that issue, and all three were examined under oath at the Lowery's criminal trial.  Defendants even offer to accept Lowery's testimony as true for purposes of the summary judgment motion.

While Defendants' analysis of the law is largely correct, it is incomplete. First, while Defendants' statement of the issue addresses Plaintiffs' coercion claim, it completely ignores Plaintiffs' claims for malicious prosecution and fabrication of evidence.  Even if the district court finds that the Officers could have reasonably believed that Lowery's confession was voluntary, qualified immunity against the coercion claim does not automatically shield the Officers from liability on the other claims.  *Cf.* ***Pierce v. Gilchrist***, 359 F.3d 1279, 1296 (10th Cir. 2004) (rejecting defendant's argument that the Fourth Amendment is not violated by the withholding of exculpatory evidence where probable cause existed for the original arrest); ***Ricciuti v. N.Y.C. Transit Authority***, 124 F.3d 123 129–130 (2d Cir. 1997) (rejecting defendants' argument "that as long as the arrest complied with the Fourth Amendment, the [plaintiffs] can have no claim for post-arrest fabrication of evidence against them").

15

Second, the subjective state of mind of the Officers is relevant to the extent that intent is an element of the Plaintiffs' claims. *Currier v. Doran*, 242 F.3d 905, 913 n.4 (10th Cir. 2001) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588–89, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)).  In this case, all of Plaintiffs' claims require a showing of intent.  *See Gilchrist*, 359 F.3d at 1296, 1299 (10th Cir. 2004) (requiring a showing of malice for the claim of malicious prosecution and a stating that a person's due process rights are implicated when the state <u>knowingly</u> uses false testimony to obtain a conviction); *cf. Chavez v. Martinez*, 538 U.S. 760, 797, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) (stating that "recovery should be available under § 1983 if a complainant can demonstrate that an officer exploited his pain and suffering with the <u>purpose</u> and <u>intent</u> of securing an incriminating statement").

Third, Malugani, Johnson, and Lowery are not necessarily the only people with information relevant to the qualified immunity defense in this case, as the issues raised by Plaintiffs are broader than just whether a reasonable officer could have believed that Lowery's confession was voluntary.  On the claims of malicious prosecution and fabricated evidence other people such as prosecuting attorneys may well have information that is relevant to the issue of qualified immunity.

With the above background, the Court will consider each category of

discovery requested by Plaintiffs.  The Court recognizes that the boundaries of

relevance and scope of  discovery are not, and perhaps cannot be, clearly outlined

in this Order.  The Court further recognizes that the discovery requested by

Plaintiffs, though mostly relevant, is substantial and may be burdensome to the

Officers being sued in their individual capacities.  Accordingly, the Court will

allow Plaintiffs to conduct the discovery discussed below in order to prepare their

opposition to Defendants' qualified immunity motion, subject, however, to

limitations on duration.  *See Van Deleen v. City of Eudora*, Case No. 96-4040,

1997 WL 445821, at *3 (D. Kan. May 8, 1997) (upholding a magistrate judge's

temporal limitation on discovery in lieu of a limitation on the scope of discovery

with respect to a qualified immunity defense in a § 1983 action).

### 1.    *Depositions of Malugani, Johnson, and Raynor*

Plaintiffs claim they are entitled to depose the three officers directly involved

in Lowery's investigation primarily to explore their knowledge and states of mind,

*i.e.,* intent, at the time of the investigation.  The Court agrees.  However, discovery

of these individuals will be limited as follows: (1)  Malugani and Johnson's

depositions shall not exceed five hours in length; and (2) Raynor's deposition shall

not exceed three hours in length.  The length of these depositions counts on-the-

record deposition time exclusive of breaks and other times when questioning is not

being conducted.  The parties will comply with the Court's deposition guidelines as set out on the court's website.

### 2.   *Depositions of Assistant District Attorneys*

Plaintiffs argue that the assistant district attorneys involved in Lowery's prosecution may have information regarding the Officers' knowledge and states of mind; information concerning essential elements of Plaintiff's claims, such as falsification of evidence; or knowledge of incriminating pretrial communications. Again, the Court agrees that this information is relevant to the qualified immunity inquiry.  Plaintiffs shall be entitled to depose not more than two prosecuting attorneys, and each such deposition shall not exceed a total of two hours in length.

### 3.   *Depositions of Other Police Officers and Supervisors*

Plaintiffs claim that other police officers and supervisors who were involved in the investigation of the Kroeplin rape or had contact with Malugani and Johnson during the investigation may be able to provide evidence of misconduct by the Officers, evidence to support additional claims, or evidence of bad faith of the Officers in pursuing Lowery.  Specifically, Plaintiffs suggest that the Officers purported to have a jailhouse informant who allegedly overheard Lowery make incriminating statement, and they hope to obtain more information regarding this informant and his interaction with the Officers.  The Court finds that some of this

discovery may be relevant to the qualified immunity motion, *e.g.,* evidence of bad faith of the Officers in pursuing Lowery and evidence of misconduct by the Officers concerning the Lowery investigation and trial.  However, evidence as to other potential investigations or cases where the same Officers may have allegedly violated another defendant's constitutional rights does not appear to be directly related to the qualified immunity issues.

As to discovery to obtain evidence to support "additional claims," the Court assumes that any alleged additional claims would be based on the same evidence concerning the Officers' investigation of the Kroeplin rape, the interrogation and investigation of Lowery and the subsequent prosecution and trial of Lowery.  So long as that is the scope of the discovery as to "additional claims" it does not exceed the scope of the discovery related to the issue of qualified immunity.  Again, however, if the reference to "additional claims" somehow implicates evidence concerning whether these same Officers have violated the rights of other criminal defendants, such discovery would, at this stage, be burdensome and not directly related to the qualified immunity issue.  While Plaintiffs argue that such testimony might be admissible at trial to show a pattern of abuse as probative of intent or absence of accident, any discovery of that nature concerning other alleged misconduct concerning other parties shall be deferred to a later date depending on

19

the Court's ruling on the qualified immunity issues.

The Court has not been provided with an estimate as to how many other police officers or supervisors might have knowledge relevant to the issues of qualified immunity. The Court does note that three individual Defendants – Alvin D. Johnson, Lt. Steve French and Captain Larry Woodyard – have been sued in Count IV of the First Amended Complaint (Doc. 46 at 29-30) based upon a theory of supervisory liability. They have joined in the motion to stay discovery. Their protection from discovery, however, extends only to claims brought against them for which they have asserted immunity. *See **Van Deleen v. City of Eudora***, Case No. 96-4040, 1997 WL 445821, at *2 (D. Kan. May 8, 1997). That protection does not prevent testimony as to claims against other defendants. *Id.* Therefore, the Court will allow the deposition of these three supervisors, but will limit the scope of those depositions to facts concerning the underlying conduct of the Officers in connection with the investigation of the Kroeplin rape, the interrogation and investigation of Lowery and the subsequent prosecution and trial of Lowery. Questions concerning any other alleged incidents of false arrests, malicious prosecution, fabricating and coercing confessions or similar conduct would relate more directly to the supervisory liability claims and will be deferred until the Court has ruled on the qualified immunity motions.

20

In addition to the above-named three supervisors, Plaintiffs will be limited to the depositions of not more than two other police officers who were involved in the investigation of the Kroeplin rape or had contact with Malugani and Johnson during the investigation and who may be able to provide evidence of misconduct by the Officers.

The depositions of the supervisors and other police officers will be limited to a maximum of two hours.

### 4.      30(b)(6) Deposition Regarding Training of the Officers

At a minimum, Plaintiffs would like to depose a designated representative of the Riley County Police Department who can describe the procedures that the Officers were trained on and expected to follow at the time of the investigation of Lowery.  Plaintiffs believe this discovery may reveal evidence of bad faith and intentional or reckless conduct.

This discovery is more tenuously connected to the qualified immunity issues in this case and would also relate to Plaintiffs' supervisory claims and *Monell* claims against the governmental entities.  However, it may also be relevant to the issues presented by the qualified immunity defense.  Even as to the issue of whether Lowery's confession was coerced, the training received by a hypothetical "reasonable officer" may well be relevant, although a violation of a training

21

guideline will not automatically deprive an officer of the right to qualified

immunity.  *See Groh v. Ramirez,* 540 U.S. 551, 564 n.7, 124 S. Ct. 1284, 157 L.

Ed. 2d 1068 (2004).  However, discovery in this area will be limited to a single

Rule 30(b)(6) deposition of the appropriate entity charged with the training of these

Officers which shall be limited to a total of two hours in length.[11]

### 5.   *Expert Discovery Concerning False Confessions and Coercive Tactics*

Plaintiffs fail to explain how this requested discovery is necessary to the

qualified immunity defense.  Therefore, this discovery will not be allowed at this

time.  By so holding, however, the Court is not precluding Plaintiffs from proffering

an expert affidavit as part of their opposition to the qualified immunity motion.  At

this point, however, no expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2) will

be required and no expert depositions will be allowed.

### E.   WRITTEN DISCOVERY REQUESTS

There is reference in the briefs to the fact that written discovery requests

(document requests or interrogatories) have been served by Plaintiffs.  The Court

has not been provided with copies of any such written discovery requests.  As

---

[11]  While the discovery is limited to a single Rule 30(b)(6) deposition, it may well be that Defendants will need to designate more than one person to address the appropriate training issues identified by Plaintiffs in their notice.  If the number of witnesses designated by Defendants is excessive, the Court will reconsider the maximum length of this deposition if the parties cannot agree on a realistic time limit.

mentioned above, only one document request has been specifically discussed by the parties in their briefing, *i.e.,* Request for Production No. 5 dealing with a request for all documents for all cases investigated by the RCPD where a suspect's confession or statement was deemed inadmissible for any reason from July 27, 1971 to July 27, 1986.  *See* n.4, *supra*.  There is no motion to compel discovery on file, and this Memorandum and Order does not purport to rule on the propriety of any of the written discovery requests.

## CONCLUSION

The Court recognizes that it has allowed eleven depositions which may last as long as twenty-seven hours.  This is extremely unusual in a case where individual defendants have raised the issue of qualified immunity.  This case itself, however, is unusual.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Stay Discovery Pending Decision on Defendants Motion for Qualified Immunity (Doc's 60 & 78) are GRANTED in part and DENIED in part consistent with this Order.

**IT IS FURTHER ORDERED** that the discovery allowed by this Memorandum and Order shall be completed by **September 2, 2005**, and Plaintiffs' response to the Motion for Qualified Immunity (Doc. 56) shall be filed by **September 30, 2005.**

Dated at Wichita, Kansas, on this 30th day of June, 2005.

                         __ s/ Donald W. Bostwick _____
                         DONALD W. BOSTWICK
                         United States Magistrate Judge