## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDDIE JAMES LOWERY, and )
AMANDA MARIE LOWERY, )
  )
      Plaintiffs, )
  )
v. )   Case No. 04-3101-JTM-DWB
  )
THE COUNTY OF RILEY, et al., )
  )
      Defendants, )
_____ )

## MEMORANDUM AND ORDER

Before the Court is Motion to Compel and supporting memorandum of Defendants Harry Malugani and Douglass Johnson (Docs. 186, 187), Plaintiff's Response (Doc. 199), and Defendants' Reply.  (Doc. 193.)  The Court has reviewed the submissions of the parties and is prepared to rule.

## PROCEDURAL BACKGROUND

The procedural background of this case was summarized in this Court's Memorandum and Order of December 27, 2007 (Doc. 151), and supplemented in this Court's Memorandum and Order of August 12, 2008 (Doc. 161).  Both are incorporated herein by reference.

## DISCUSSION

Defendants Malugani and Johnson file the present motion seeking an Order

compelling Plaintiff to respond to Interrogatories Nos. 1 and 2 of Defendants'

Second Set of Interrogatories.  The interrogatories seek identification of

individuals with whom Plaintiff has discussed the various facts and claims in his

lawsuit as well as the substance of any such conversations.  (*See* Doc. 186, at 3-5.)

Plaintiff initially objected that the interrogatories are vague, overly broad,

unduly burdensome, irrelevant, not reasonably calculated to lead to the discovery

of admissible evidence, premature, and seek information protected by the

attorney/client privilege and/or the work-product doctrine.[1]  Plaintiff also argues

that Defendants' discovery requests exceed the limit of interrogatories provided by

Rule 33(a)(1) of the Federal Rules of Civil Procedure.[2]

---

[1]  Of these, Plaintiff's response to Defendants' Motion to Compel addresses the overly broad and unduly burdensome objections only.  The Court deems the remainder of the objections to be waived by Plaintiff.  Thus, the Court's analysis will not address the other objections (vague, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and premature).  As to claims that some of the information sought is or may be protected by the attorney/client privilege and/or the work-product doctrine, this should not be a problem since the Interrogatory No. 1 specifically excludes any discussions with "legal counsel," and Interrogatory No. 2 only seeks the substance of the conversations in Interrogatory No. 1 -- thus again excluding any discussions between Plaintiff and legal counsel.

[2]  Rule 33(a)(1) allows each party to serve 25 interrogatories.  The Scheduling Order in this case, however, specifically allowed each party to serve 30 interrogatories. (Doc. 162, at 4.)  The Court will, therefore, enforce a 30 interrogatory limit.

2

**A.      Plaintiff's Supernumerary Objection is Improper**.

In their motion, Defendants argue that Plaintiff's supernumerary objection

has no basis because Plaintiff failed to "either seek a protective order and not

answer the interrogatories or answer up to the numerical limit and object to the

remaining without answering."  (Doc. 187, at 4-5, *citing **Heartland Surgical***

***Specialty Hospital, LLC v. Midwest Division, Inc***., No. 05-2164, 2007 WL

2192860, at *2 (D.Kan. July 25, 2007)).  Defendants also contend that Plaintiff

"incorrectly interprets the term 'discrete subparts' contained in Rule 33(a)."  (Doc.

187, at 5.)  Defendants argue that the interrogatories at issue "are directed at a

common theme" and, therefore, should each be counted as one interrogatory.  (*Id*.)

Plaintiff contends that he has responded to 30 interrogatories, counting the

18 interrogatories contained in Defendants' First Set of Interrogatories (Doc. 198-

2) with the 12 to which Plaintiff replied in Defendants' Second Set of

Interrogatories.[3]  Further, Plaintiff contends that Interrogatories 1 and 2 each

contain a minimum of 14 "discrete topics of inquiry" because the various subparts

"do not relate to a common theme..."  (Doc. 189, at 7.)

---

[3]  While Plaintiff did answer to 12 of the 14 numbered interrogatories in
Defendants' second set, he chose to respond to Nos. 3-14, not Nos. 1-12 (or the first 12
discreet subparts depending on how the interrogatories are counted).  (Doc. 187-6, at 3-5.)

3

Defendants reply that the September 12, 2008, Scheduling Order (Doc. 162) "controls discovery going forward," thus authorizing an <u>additional</u> 30 interrogatories beyond any discovery that occurred prior to that Order. (Doc. 193, at 2.) According to Defendants, "[t]his limit did not include interrogatories answered back in 2004." (*Id*.) The Court does not agree. The September 12, 2008 Scheduling Order simply states that "[n]o party shall serve more than 30 interrogatories, including all discrete subparts, to any other party." (Doc. 162, at 4.) It does not specify that this amount supplements, or is in addition to, the discovery previously served. This is the same number of interrogatories and language used in the July 14, 2004 Scheduling Order (Doc. 23.) The court often issues more than one scheduling order in a case and, for the convenience of counsel, normally produces a completely new version of the scheduling order so that everyone can see all current deadlines from a single document. Therefore it is common to simply repeat the information previously contained in the prior scheduling order as to number of depositions, length of depositions,  number of interrogatories, etc. Unless it is specifically stated to the contrary, the newer version of a scheduling order is never intended to expand the prior limits on these discovery devices. That is the situation in this case. The number of interrogatories and the number of depositions in the 2008 scheduling order were merely carried

4

forward from the 2004 scheduling order and were never intended to expand the total number of interrogatories or depositions allowed in the case.[4]  Therefore, the limit in question is the 30 interrogatory limit that was set in 2004 and carried forward into the 2008 scheduling order.

Defendants also argue that Plaintiff "construes the common theme requirement . . . too narrowly."  (Doc. 193, at 2-3.)  According to Defendants, each of the interrogatories at issue address a common theme – Interrogatory No. 1 dealing with "the identities of persons with whom [Plaintiff] discussed specific details of the case" and Interrogatory No. 2 relating to "the substance of conversations with those persons."  (*Id.*, at 3.)  The Court cannot agree with Defendants on this issue, either.

Whether a subpart should be counted as a separate interrogatory depends on a determination of whether the subpart seeks information on "discrete" subjects. *See  **Williams v. Bd. of Cty. Comm'rs,*** 192 F.R.D. 698, 701 (D.Kan. 2000).  The Advisory Committee Notes to the 1993 amendment provide the following guidance as to when subparts should and should not count as separate interrogatories:

> Parties cannot evade [the] presumptive limitation through

_____

[4]  The court did set some special limitations on discovery in this case concerning the issue of qualified immunity by an order filed June 30, 2005.  (Doc. 96.)  That order dealt only with which depositions could be taken concerning qualified immunity and it did not purport to alter any limits on written discovery.

> the device of joining as "subparts" questions that seek
> information about discrete separate subjects.  However, a
> question asking about communications of a particular
> type should be treated as a single interrogatory even
> though it requests that the time, place, persons present,
> and contents be stated separately for each such
> communication.

146 F.R.D. 401, 675-76.  A respected commentator elaborated as follows:

> [I]t would appear that an interrogatory containing
> subparts directed at eliciting details concerning the
> common theme should be considered a single question,
> although the breadth of an area inquired about may be
> disputable.  On the other hand, an interrogatory with
> subparts inquiring into discrete areas is more likely to be
> counted as more than one for purposes of the
> interrogatory.

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE

AND PROCEDURE § 2168.1 at 261 (2d ed.1994).  Other courts have reasoned that if

subparts are subsumed within or logically and necessarily related to the primary

question, they should be counted as one interrogatory.  *See **Kendall v. GES**

**Exposition Services, Inc.,*** 174 F.R.D. 684 (D.Nev. 1997); *but see **Aetna Cas. &***

***Sur. Co. v. W.W. Grainger, Inc.,*** 170 F.R.D. 454 (D.Wis. 1997) (interpreting local

rule to require that each subpart be counted separately).

In reviewing the 20 separate subparts contained in both Interrogatory No. 1

and No. 2,[5] the Court finds that each request contains a minimum of nine discrete,

commonly themed interrogatories:

1.  Subsections (a) and (b) seek the identities of individuals with whom Plaintiff conversed regarding his whereabouts and recollection of events on July 26, 1981.

2.  Subsection (c) relates to Plaintiff's guilt or innocence to the crimes of which he was convicted.

3.  Subsections (d) and (e) refer to conversations and statements made to Defendants Malugani and Johnson.

4.  Subsections (f), (g), and (h) seek information relating to Plaintiff's conversations with/polygraph examination by Allen Raynor.

5.  Subsections (j) and (k) relate to events occurring between July 29, 1981, and Plaintiff's arrest on July 28, 1981, including the search of his home and car.

6.  Subsection (l) seeks information relating to the results of Plaintiff's first jury trial.

7.  Subsection (m) seeks information on the separate issue of Plaintiff's second jury trial.[6]

8.  Subsections (n), (o), (p), and (q) relate to persons allegedly involved in the aggravated burglary and rape of Arta Kroeplin

---

[5] Interrogatory No. 2 incorporates, by reference, Interrogatory No. 1. As such, each of the subparts contained in Interrogatory No. 1 are also deemed to be contained in Interrogatory No. 2, and will be counted separately as such.

[6] Subsection (i) can be grouped with either subsection (l) and/or (m) as it requests information regarding Plaintiff's sworn testimony at the suppression hearing, his first trial, and/or his second trial.

on July 26, 1981.

9.      Subsections (r), (s), and (t) relate to Plaintiff's allegations against each of the Defendants in this case, including the emotional distress and stigma "incurred as a result of incarceration or sex offender registration."

With each of these nine discrete subparts being contained in <u>both</u> Interrogatory No. 1 and No. 2, the Court has identified a total of 18 separate interrogatories contained within these two numbered interrogatories.  Counting the 18 interrogatories contained in Defendants' first set as well as the remaining 12 interrogatories (Nos. 3-14) included in Defendant's second set, this equates to a total of 48 Interrogatories being served on Plaintiff by these Defendants.  Two issues, however, necessitate that the Court overrule Plaintiff's supernumerary objection.

First, Plaintiff did not follow this Court's stated procedure for a party making a supernumerary objection.  Defendants correctly argue that when such a situation arises, the objecting party is to either seek a protective order and not answer the requests at issue or answer up to the numerical limit and object to the remaining requests without answering.  ***Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc***., No. 05-2164, 2007 WL 756631, at *6 n. 6 (D.Kan. March 8, 2007) (citing ***Capacchione v. Charlotte-Mecklenburg Schs.***, 182 F.R.D. 486, 492 (W.D.N.C.1998)); *see also **Heartland Surgical Specialty Hospital, LLC***, 2007 WL 2192860, at *2.  Instead, Plaintiff simply chose to skip over

8

Interrogatories 1 and 2 and respond to Nos. 3-14.  This is improper. "[T]he responding party is not entitled to randomly select which of the . . . interrogatories it will answer . . ." *Capacchione*, 182 F.R.D. at 492.

Further, in a case involving a single party opposing multiple parties, "*each* [of the multiple opposing parties] may serve up to 30 interrogatories upon the [single party]." *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2008 WL 1924945, at *3 (D.Kan. Apr. 28, 2008) (emphasis in original) (making this determination in a case involving multiple plaintiffs and one defendant).  Such a holding is consistent with the language of the Court's Scheduling Order in the present matter.

The discovery limitations of the Scheduling Order do not mandate that Defendants as an aggregate – or any combination of Defendants – may serve no more than 30 interrogatories on Plaintiff.  Rather, the Order states that "**[n]o party** shall serve more than 30 interrogatories, including all discrete subparts, to any other party."  (Doc. 162, at 4 (emphasis added).)  This clearly allows each Defendant to serve up to 30 interrogatories on Plaintiff.  Thus, Defendants Malugani and Johnson are each allowed 30 interrogatories for a total of 60 between them.  *See Semsroth*, 2008 WL 1924945, at *3 (holding that "[a] group of four plaintiffs may serve a total of 120 general interrogatories [on a single defendant],

and it is not necessary for the Court to allocate a particular interrogatory to a particular plaintiff").  Plaintiff has not argued that Defendants have served more than 60 interrogatories on him and the Court will not entertain such contention – and enter into a detailed analysis of all of Defendants' interrogatories – *sua sponte*. Plaintiff's supernumerary objection is, therefore, overruled.

**B.     Interrogatories 1 and 2 are Not Overly Broad and Unduly Burdensome**.

Discovery requests must be relevant on their face.  ***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See **Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections); ***Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").  The Court finds the interrogatories to be relevant on their face.

10

Thus, Plaintiff must establish that they are overly broad and unduly burdensome.[7]

Plaintiff objects that Defendants' interrogatories are overly broad and burdensome because they require him to "attempt to identify each and every person with whom he has spoken, over the past 27 years concerning" his claims and the facts relating thereto. (Doc. 189, at 9.)  Citing ***Allianz Ins. Co. v. Surface Specialties, Inc.***, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D.Kan. Jan. 7, 2005), Plaintiff argues that he does not have the burden to support this objection because Interrogatories 1 and 2 are overly broad on their face.  (*Id.*, at 8.)  Although 27 years is a very lengthy time frame and the interrogatories address numerous topics, the fact remains that this time frame and these topics are encompassed by the claims that Plaintiff has chosen to bring against Defendants.  While the breadth of these interrogatories is substantial, it is not the same as

_____

[7] As an initial matter, Plaintiff's counsel apparently informed defense counsel in a telephone conference on December 30, 2008, that he did not intend to supplement his responses to Interrogatories Nos. 1 and 2, "but that Defendants could ask these same questions of the Plaintiff in a deposition."  (Doc. 187, at 2.)  Plaintiff's suggestion that Defendant should proceed by deposition to obtain this information is in direct contravention of the Federal Rules of Civil Procedure, particularly Fed. R. Civ. P. 26, which generally allow a party to chose its method and sequence of discovery.  Further, Plaintiff's counsel has stated that the process of responding to these interrogatories would encompass "exhaustive facts."  (Doc. 189, at 10.)  The Court therefore believes that Plaintiff should be able to provide a more thorough, complete and correct response to these inquiries by responding to a written discovery request (with an intervening 30 days to investigate and compile the information) as opposed to a cold question in a deposition.

requesting "each and every fact" which blanket the entire case.[8]  As such, the Court

cannot find that the interrogatories are overly broad or unduly burdensome on their

face.

Furthermore, Plaintiff has not provided the Court with any substantive

evidence as to how or why he is unable to provide the requested information.

> When a party files a motion to compel and asks the Court
> to overrule certain objections, the objecting party must
> specifically show in its response to the motion to compel,
> despite the broad and liberal construction afforded by the
> federal discovery rules, how each request for production
> or interrogatory is objectionable.

*Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D.Kan.2004).

"The objecting party must show specifically how, despite the broad and liberal

construction afforded the federal discovery rules, each question is overly broad,

burdensome, or oppressive by submitting affidavits or offering evidence revealing

the nature of the burden."  *Allianz*, 2005 WL 44534, at *2 (internal citation

omitted).  Plaintiff's responses were, therefore, nothing more than mere conclusory

---

[8]  While defendants carefully avoided using the phrase "each and every" in
connection with the listed subparts, it is clear that they expect Plaintiff to recite virtually
all conversations identified in those subparts that have occurred over the last 27 years.  In
this regard, the court expects Plaintiff to identify all "principal or material" instances that
he can recall.  *Cf. Allianz Ins. Co.*, 2005 WL 44534, at * 9.  The court doubts that any of
the lawyers in this case, if presented with the same questions, could remember every
person they have talked with about this case or when those discussions occurred and what
was said.

objections that failed to specifically demonstrate how Plaintiff's requests were

improper.  *See* ***Teichgraeber v. Memorial Union Corp. of Emporia State Univ.***,

932 F.Supp. 1263, 1266 (D.Kan. 1996) (internal citation omitted).  As such,

Plaintiff's "vague" and "burdensome" objections are overruled.  In fact, by urging

that Defendants could ask the same questions in a deposition, Plaintiff has

impliedly conceded that these questions are calculated to lead to the discovery of

admissible evidence and can, in fact, be answered.  As previously noted, it should

be easier for Plaintiff to answer the questions in writing, after having time to

remember and reflect on the topics, rather than to be presented with these questions

for the first time in a deposition.  Having required Plaintiff to answer these

interrogatories, however, the court will not look with favor on later deposition

questions to Plaintiff that ask for this same information.


**IT IS THEREFORE ORDERED** that Plaintiff's objections are overruled

and Defendants' Motion to Compel (Doc. 186) is **GRANTED**.  Plaintiff shall

respond to Interrogatories Nos. 1 and 2 of Defendants Malugani and Johnson's

13

Second Set of Interrogatories, on or before **April 13, 2009**.

    **IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 12th day of March, 2009.

                 s/   DONALD W. BOSTWICK
                DONALD W. BOSTWICK
                United States Magistrate Judge